UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIM TILLOTSON,

                    Plaintiff,                        Case No. 15-cv-14479

v.                                     Honorable Thomas L. Ludington

THE MANITOWAC COMPANY, INC.,

                    Defendant.

_____/

## ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

      Plaintiff Kim Tillotson filed a complaint naming his former employer, The Manitowoc Company, Inc., ("Manitowoc") as a Defendant and alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*., and the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2201, *et seq*. ECF No. 1. On January 6, 2016, eight days later, Tillotson filed an amended complaint, which brought the same two claims. ECF No. 4. Manitowoc responded with a motion for summary judgment. ECF No. 29. On February 3, 2017, the Court granted Defendant's motion for summary judgment and dismissed the complaint. ECF No. 41. On March 3, 2017, Tillotson filed a motion to alter or amend the judgment, arguing that the Court improperly made factual determinations in resolving the motion for summary judgment. ECF No. 43. The Court directed Defendant to respond, and it did so. ECF Nos. 44, 45. For the reasons stated below, Tillotson's motion to alter or amend the judgment will be denied.

## I.

      The underlying facts were summarized in the Court's February 3, 2017, Opinion and Order. ECF No. 41. For clarity, they will be briefly summarized. Tillotson worked for Manitowoc as a product sales manager, a sales position that involved frequent travel. Those

travel requirements caused difficulty for Tillotson because he suffers from "dumping syndrome," a condition stemming from damage Tillotson sustained to the vagus nerves in his stomach earlier in life. Even though the syndrome sometimes resulted in Tillotson being forced to use the bathroom up to eight times a day, he kept the condition secret from Manitowoc for a considerable period of time and performed his job duties.

In 2014, Tillotson's workload increased and his symptoms worsened. To explore the possibility of an accommodation, Tillotson informed a human resources employee about his condition. That employee advised Tillotson to document his medical issues and contact Matrix Absence Management, Inc., a third-party contractor Manitowoc used to handle applications for leaves of absence. Tillotson submitted a request. Matrix informed Tillotson that his request would be approved, pending submission of medical certification that he was suffering from a serious health condition. Tillotson's doctor submitted a certificate which recommended certain work restrictions, but did not indicate that Tillotson required leave or otherwise recommend immediate action. Because the certificate did not indicate that Tillotson was suffering from a serious health condition, Matrix denied Tillotson's request for leave. Tillotson subsequently met with his supervisor and a human resources representative regarding the work restrictions imposed by his doctor. Together, the three decided that no immediate changes to Tillotson's duties were required. Tillotson believed that future changes would be necessary, but Tillotson's duties at the time were consistent with the work restrictions.

In April 2015, there was a reduction in force within Manitowoc. Tillotson was considered for termination, but not discharged. The precise timeline is unclear, but it appears that the decision to retain Tillotson through the April 2015 reduction was made before Tillotson disclosed the details of his work restrictions to his boss. In the months that followed Tillotson's

disclosure, Manitowoc employees twice allegedly made statements to third parties where they suggested that "you can't have a sales guy who can't travel." Humphreys Dep. at 27.

In November 2015, Tillotson was discharged. According to Mr. Willoughby, the executive who made the decision to discharge Tillotson, the determination was based on a rubric the company had previously created. That rubric ranked an employee's "performance" and "potential." Of the four product sales managers employed at the location where Tillotson worked, Tillotson's ranking—Medium Perfomance/Medium Potential—was the lowest. Tim Wilczak had a High Performance/High Potential ranking. Jeffrey Michael had a High Performance/Medium Potential ranking. Pam Sharrar had a Medium Performance/High Potential ranking. The rubric was created during Manitowoc's "annual talent assessment process." The record does not specify when that assessment process occurred, but Tillotson appeared to concede in his briefing on the motion for summary judgment that it was created prior to the April 2015 reduction in force. *See* Pl. Resp. at 20, ECF No. 31; February 3, 2017, Op. & Order at 25.

## II.

Tillotson is seeking relief under Federal Rule of Civil Procedure 59(e). That Rule allows a party to file a "motion to alter or amend a judgment." *Id.* Motions under Rule 59(e) may be granted "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). If a party is effectively attempting to "'re-argue a case' . . . the district court may well deny the Rule 59(e) motion on that ground." *Id.* (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). Likewise, a Rule

59(e) motion is not an appropriate vehicle to "'submit evidence which could have been previously submitted in the exercise of reasonable diligence.'" *Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus., Inc.*, 86 F. Supp. 2d 721, 726 (E.D. Mich. 2000) (quoting *Nagle Industries, Inc. v. Ford Motor Company*, 175 F.R.D. 251, 254 (E.D. Mich. 1997)).

## III.

### A.

Tillotson takes issue with a portion of the Court's analysis regarding his FMLA retaliation claim. He does not challenge the dismissal of his FMLA interference or age discrimination claims. As regards the retaliation claim, the Court first found that Tillotson had met his burden of establishing a prima facie case of FMLA retaliation under the *McDonnell Douglas* burden-shifting framework. Under that framework, once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the adverse employment action." Feb. 3, 2017, Op. & Order at 24 (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Manitowoc asserted that Tillotson was discharged because he "ranked as the weakest product sales manager at Delfield in terms of performance and potential." *Id.* The Court then rejected Tillotson's assertion that Manitowoc had "not met its burden of offering evidence of a legitimate non-discriminatory reason for the adverse employment action":

> Specifically, Tillotson asserts that, because no evidence has been provided detailing how the rubric scores were calculated, the rubric cannot provide a legitimate reason for the discharge. However, Tillotson offers no legal authority that supports the assertion that Manitowoc must specifically prove each of the factors that may have contributed to the ultimate rationale for discharging Tillotson. Tillotson does not challenge the fact that the rubric identified him as the lowest ranked product sales manager at Delfield. Likewise, Tillotson does not contest Manitowoc's representations (supported by deposition testimony) that the rubric was created before Tillotson formally made his request for a reduced schedule. *See* Pl. Resp. at 20, ECF No. 31 (noting that the decisionmaker had no

knowledge of Tillotson's request for a modified schedule until after the April 2015 reduction in force and further noting that there was no evidence that employees were evaluated for discharge differently in April 2015 than November 2015). Absent any evidence that the rubric was created or changed after Tillotson engaged in protected conduct, the rubric is sufficient to satisfy Manitowoc's burden of providing a legitimate, nondiscriminatory reason for the employment action.

*Id.* at 24–25.

Footnote eleven was inserted following the sentence stating that Tillotson "does not contest . . . that the rubric was created before Tillotson formally made his request for a reduced schedule." It reads as follows:

The rubric was created during Defendant's annual talent assessment process. Although neither party has presented evidence regarding when, exactly, that process occurred, it seems reasonable to conclude that it occurred around the end of the previous year. Tillotson provides no evidence that the rubric was created or changed after he notified Defendant of his travel restrictions.

Feb. 3, 2017, Op. & Order at 25 n. 11.

Tillotson argues that the inference in footnote eleven regarding when the rubric was created was a "factual finding" made "against Plaintiff's position" and thus incompatible with the standard of review for motions for summary judgment. Mot. Alter Am. At 3.

Tillotson also takes issue with the analysis regarding the next stage of the *McDonnell Douglas* framework, where Tillotson bore the burden of demonstrating that Manitowoc's reliance on the rubric was merely a pretext for retaliation. He argues that the "complete lack of explanation as to how Plaintiff ranked 'Medium' as opposed to 'High' regarding his 'potential' calls into question whether this determination had any connection to data or was mere conjecture by Mr. Willoughby [the decision-maker]." *Id.* at 5. Tillotson argues broadly that the Court "failed to raise these inferences [related to the potential subjectivity of the rubric] in Plaintiff's favor." *Id.* As explained below, Tillotson's arguments fall short of demonstrating a clear error of law.

**B.**

Tillotson's motion misconstrues both the standard of review for summary judgment motions and way the *McDonnell Douglas* framework allocates the burden of proof. Well-established law directs that a motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Tillotson's motion does not adequately account for his responsibility to set out specific facts showing a genuine issue of fact once Manitowoc has asserted that the record does not contain sufficient evidence of an issue of fact.

Likewise, Tillotson's motion fails to recognize that the summary judgment standard of review and *McDonnell Douglas* framework interact to place the burden of advancing evidence upon Tillotson at certain points. When asserting an FMLA retaliation claim, the plaintiff initially bears the burden of establishing a prima facie case of retaliation. *Donald*, 667 F.3d at 761. In this case, Tillotson met that burden. Next, the defendant bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 762. Manitowoc asserts that Tillotson was discharged because, of the four product sales managers at Defield, he ranked the

lowest on a rubric prepared during Manitowoc's annual talent assessment process. A rubric which did not rely upon Tillotson's illness in ranking him would easily constitute a legitimate and nondiscriminatory basis on which the company could decide to discharge Tillotson. As indicated in the February 3, 2017, Opinion and Order, Tillotson's response to Manitowoc's motion for summary judgment did "not challenge the fact that the rubric identified him as the lowest ranked product sales manager at Delfield." Feb. 3, 2017, Op. & Order at 25. Likewise, Tillotson did not "contest Manitowoc's representations (supported by deposition testimony) that the rubric was created before Tillotson formally made his request for a reduced schedule." *Id.* In other words, Tillotson did not rebut Manitowoc's assertion that Tillotson was discharged in reliance on a rubric that was prepared before the company was aware of his FMLA request. As described above, it was Tillotson's burden to rebut in some way Manitowoc's assertion that he was discharged based on a nondiscriminatory rubric.

It is true that Tillotson asserted in its response brief that "Defendant has offered no evidence as to how on this rating Plaintiff was determined to 'Medium Potential' [sic] as opposed to 'High Potential.' Without such evidence, Plaintiff submits that Defendant has failed to meet its burden." Pl. Resp. Br. at 21–22. But that argument goes to the issue of whether Manitowoc's purported explanation for Tillotson's dismissal was a mere pretext for retaliation. As the Court explained, the "plaintiff may 'rebut the employer's reason by showing that the proferred reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination.'" Feb. 3, 2017, Op. & Order at 25 (quoting *Donald*, 667 F.3d at 762). Importantly, Tillotson was the one who bore the burden of presenting evidence that the rubric was a pretext for retaliation. *Id.* Manitowoc had no obligation to provide extensive detail regarding how the rubric was calculated or why Tillotson was ranked below other product sales

managers. To be sure, if Tillotson's ranking was based on his request for a reduced schedule or other illegitimate reasons, that would be evidence of pretext. But it was Tillotson's responsibility to marshall that evidence during discovery, and he did not do so.

Thus, the Court's inference regarding when the rubric was created was based on Manitowoc's assertions and the testimony suggesting that it was prepared before the company was aware of Tillotson's request for a reduced schedule. If that assertion (supported by some evidence) was true, then the rubric could not have been a vehicle for hidden retaliation. Tillotson did not contest that representation about the timeline, much less provide evidence which would demonstrate a dispute of fact regarding that assertion, meaning Tillotson's retaliation claim failed at the pretext stage. Even if the Court had chosen to infer (in contradiction of available evidence) that the rubric had been created *after* Tillotson requested a reduced schedule, Tillotson still failed to meet his burden of identifying evidence of pretext. As the Court explained:

> In attempting to meet his burden, Tillotson again asserts that the lack of details regarding how Tillotson's ranking on the rubric was calculated demonstrates that the proffered reason for discharge was pretextual. But even if Tillotson could show that he was erroneously ranked so low, he has not shown that Manitowoc believed the rubric was inaccurate. Absent evidence showing that Manitowoc knew the ranking was erroneous, the company would be protected by the honest belief rule.

*Id.* at 26.

Accordingly, even if the Court improperly inferred that the rubric was created at the end of the previous year, that inference was irrelevant to the ultimate disposition.

In short, Tillotson has not demonstrated a clear error of law in the opinion and order. The Court reasonably accepted Manitowoc's explanation of how the rubric was relied upon because Tillotson presented no evidence to contradict the company's assertions. Even if the Court had rejected Manitowoc's representations regarding the timing of the rubric creation, Tillotson's

arguments still fell far short of identifying a genuine issue of fact regarding pretext. The remaining arguments Tillotson makes within his motion either reiterate arguments already made and expressly rejected or constitute new lines of argument. In either instance, they are not cognizable in a Rule 59(e) motion.

## IV.

Accordingly, it is **ORDERED** that Plaintiff Tillotson's motion to alter or amend the judgment, ECF No. 43, is **DENIED.**

Dated: May 2, 2017          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 2, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager